JEFFREY F. STANBACK AND ROE ELLA WOODARD v. CITIZENS NATIONAL BANK OF RALEIGH, TRUSTEE.

(Filed 29 May, 1929.)

**1. Trusts D a—Trustor may revoke voluntary trust of personal property.**

A trust estate in personalty created by the donor in consideration of one dollar and natural love and affection is a voluntary trust and may be revoked by the donor of the trust under the provisions of C. S., 996, as amended.

**2. Same—Power of revocation not affected by contingent interests under trust.**

Where a voluntary trust is created in the stock of a bank for the life of the donor or until he reach the age of fifty years, and at the termination to his issue or in the absence of issue to his next of kin under the statute of distributions, those who take in remainder take upon a contingency, the vesting of which depends upon the uncertain happening of a future event, and the trust may be revoked by the donor under the provisions of C. S., 996.

**3. Statutes B d—Retroactive statute not affecting vested interests is Constitutional.**

An *ex post facto* statute prohibited by the State Constitution, Art. I, sec. 32, relates only to criminal statutes, and though vested rights may not be affected by retroactive laws, contingent interests may be affected thereby, and where there is a voluntary trust estate with the limitation over upon a contingency determinable at some future time as to the persons who take thereunder, the power of revocation of the trust given by C. S., 996, is not objectionable as falling within the Constitutional inhibition.

APPEAL by defendant from *Midyette, J.,* at April Term, 1929, of WAKE. Affirmed.

*Robert N. Simms and R. Gordon Finney for Jeffrey F. Stanback.*
*H. G. Connor, Jr., for Roe Ella Woodard.*
*Smith & Joyner for defendant.*

ADAMS, J.  This is a controversy without action, in which the plaintiffs seek to revoke a trust under C. S., 996, as amended by the act of 1929.  Jeffrey F. Stanback is the son of Annice R. Stanback, deceased, and the nephew of his coplaintiff, Roe Ella Woodard.  Annice R. Stanback left a will, by which, after bequeathing certain personal property and shares of stock, she devised the residue of her estate to the defendant as trustee for the uses and trusts declared and set forth in her will. The defendant is to manage and control the trust estate, to collect the income therefrom, and to pay the net income to Jeffrey F. Stanback. The trust is to terminate when Jeffrey F. Stanback arrives at the age of fifty years, or at his death if he does not reach that age.  When the trust comes to an end the whole interest therein is to vest in Jeffrey F. Stanback if living; but if he dies under the age of fifty years the trust estate shall go to his issue, if any, *per stirpes,* and if there is no issue then to his next of kin under the statute of distributions.  The trustee is directed, when the trust ceases, to divide and deliver the personal property and to convey the real estate, to the beneficiaries named in the will.

On 31 December, 1927, Mrs. Woodard, one of the plaintiffs, voluntarily and without value, but in consideration of her love for Jeffrey F. Stanback, executed a written instrument appointing the defendant a trustee to hold 260 shares of the capital stock of the defendant, owned by her and represented by certificate No. 705, upon the terms and conditions set up and declared in the will of Mrs. Annice R. Stanback.  The instrument was signed and the trust accepted by the defendant.  On 27 March, 1929, Mrs. Woodard signed and delivered to the defendant a written communication purporting to revoke the trust created on 31 December, 1927, so far as it affected or concerned the issue or the next of kin of Jeffrey F. Stanback; and at the same date Mrs. Woodard and Jeffrey F. Stanback signed and delivered to the defendant a written communication purporting jointly to revoke the former trust, and requested that the certificate for the 260 shares of stock be surrendered and that in lieu thereof two certificates of one hundred and thirty shares each be issued—one certificate to be delivered to Jeffrey F. Stanback as owner and the other to be held by the defendant in accordance with the terms of the trust.  This communication was accompanied by a written instrument signed by Mrs. Woodard purporting to appoint the defendant a trustee of 130 shares of the capital stock of the defendant for uses and trusts substantially identical with those declared in the will of Mrs. Stanback.  The defendant denied Mrs. Woodard's power to revoke the trust first created and insisted that the contingent interest therein could not be extinguished and that in order to protect this interest the trust must be preserved.

. The trial judge. held that the trust created by the instrument dated 31 December, 1927, had been revoked and the trustee discharged. He adjudged that the defendant surrender the certificate for the 260 shares of stock and. issue two certificates of 130 shares each, one to be delivered to Jeffrey F. Stanback as owner, and the other to be held by the defendant. upon the trusts declared in the instrument dated 27 March, 1929. Accordingly, judgment was rendered for the plaintiffs and the defendant appealed.

The maker's right to revoke a grant of future interests to persons not *in esse* was restricted by C. S., 996, to voluntary conveyances of some future interest in real estate. By an act ratified 19 March, 1929, the General Assembly amended this statute by adding the following: "The grantor, maker or trustor. who has heretofore created or may hereafter create a voluntary trust estate in real or personal property for the use and benefit of himself or of any other person or persons *in esse* with a future contingent interest to some person or persons not *in esse* or not determined until the happening of a future event may at any time, prior to the happening of the contingency vesting the future estates, revoke the grant of the interest to such person or persons not *in esse* or not determined by a proper instrument to that effect: *Provided,* that in the event the instrument creating such estate has been recorded, then the deed of revocation of such estate shall be likewise recorded before it becomes effective."

Two questions are presented: 1. Did the amended statute authorize Mrs. Woodard to revoke the trust she had created as to all interests except those of Jeffrey F. Stanback? This involves the two subordinate questions whether (a) the trust was voluntary and whether (b) it limited future contingent interests to some person or persons not *in esse* or not determined. 2. Was the statute enacted in breach of the Constitution?

There can be no serious doubt that the trust was voluntary within the meaning of the statute. Indeed, it seems to have been so regarded by the parties themselves, for in the agreed statement of facts it is said that the paper creating the trust was executed by Mrs. Woodard "without any valuable consideration and voluntarily." It recites a consideration of one dollar and the grantor's love and affection for her nephew; but it recites also the grantor's desire to make a gift of the property. The recited consideration is not "valuable," that is, not "founded in motives of justice"; but it is "good"—founded on a motive of generosity and therefore merely voluntary or gratuitous and without valuable consideration. 2 Bl., 297. It is perfectly evident that the trustor received no consideration for the "gift"—the recital of the inconse-

quential sum of one dollar being a mere matter of customary form. *Allen v. Overton,* 94 So., 477; *Hopkins v. White,* 128 Pac., 780; *Oswald v. Nehls,* 84 N. E., 619; *Gentry v. Field,* 45 S. W., 286. See concurring opinion of *Ruffin, C. J.,* in *O'Daniel v. Crawford,* 15 N. C., 208.

All the interests except those of Jeffrey F. Stanback are both future and contingent. He has no children. If he does not become the absolute owner of the trust estate, the title will vest in his issue, if any, and, if there is no issue, in such of his next of kin as may be entitled thereto under the statute of distributions in force at the time of his death. These contingent interests, therefore, are embraced in the terms of the statute.

The trust was declared in 1927; the amendment became effective in March, 1929. The appellant insists that the statute is invalid because retroactive and destructive of interests created anterior to its enactment. C. S., 996, before it was amended by the act of 1929, did not purport to be retroactive; the subject-matter was the right to revoke a voluntary conveyance of some future interest in land conveyed or limited to a person not *in esse*. In *Roe v. Journegan,* 175 N. C., 261, it was held that section 996 did not affect deeds executed before its enactment. That was an action to recover land. The plaintiffs claimed title under a deed executed by their grandfather to his son in 1881; the defendant claimed under a deed from the same grantor to the same grantee made in 1886, and under a deed from the grantee to the defendant. The first deed conveyed title to the son during his natural life; if he should have any children, then to them, if not, the land was to revert; if his wife survived him she was to have a life estate. The wife died without issue; the son, her surviving husband, married again and died leaving children. The second deed was in fee simple. The real controversy was as to the delivery of the first deed; but it was decided that if this deed had been delivered, the plaintiffs, although not *in esse* at the time, were the owners of the land by reason of the conveyance of a life estate to their father with a contingent remainder, and that the deed of 1886 could not affect their title. It had been executed prior to the enactment of section 996 and the title, having passed, could not be recalled.

This case is not decisive of the question before us. As originally enacted, section 996 applied only to voluntary conveyances; as amended it includes the creation of voluntary trusts in real or personal property, not only for the benefit of the grantor, maker or trustor, and of persons not *in esse,* but for the benefit of persons determinable upon the happening of a future event. Furthermore, as amended, it applies to trusts heretofore created as well as to such as may be created hereafter.

The amended statute has no reference to crimes and is therefore not *ex post facto*. Constitution, Art. I, sec. 32. *Tabor v. Ward*, 83 N. C., 291; *Calder v. Bull*, 3 Dallas, 386, 1 Law Ed., 648. But there is no provision in the State or Federal Constitution which prohibits the passage of retroactive laws, as distinguished from those that are *ex post facto*, unless they are such as impair the obligation of contracts or disturb rights. *Tabor v. Ward, supra; S. v. Bond*, 49 N. C., 9; *S. v. Bell*, 61 N. C., 76; *Hinton v. Hinton, ibid.*, 410. We do not see how the statute disturbs any vested rights. The term "vested rights" relates to property rights, and "a mere expectancy of future benefit, or a contingent interest in property founded on anticipated continuance of existing laws does not constitute a vested right. Contingent rights arising prior to the enactment of a statute, and inchoate rights which have not been acted on are subject to legislative control." 12 C. J., 955. "The power that authorizes or proposes to give may always revoke before an interest is perfected in the donee." *Anderson v. Wilkins*, 142 N. C., 154. The judgment is

Affirmed.